EBNER v. ALASKA MILDRED GOLD MINING CO.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,516.

1. CORPORATIONS (§ 309*)—OFFICERS—EXPENSES INCURRED BY PRESIDENT.

In the absence of any contract therefor, the president and superintendent of a corporation cannot charge it with sums expended by him for dinners and entertainments to prospective purchasers of stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1367; Dec. Dig. § 309.*]

2. CORPORATIONS (§ 308*)—OFFICERS—PRESIDENT—RIGHT TO SALARY.

The president of a corporation, who performs only the services required from him as such officer under the by-laws, is not entitled to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pay himself a salary from money of the company in his possession, where there has never been any agreement for a salary nor claim therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1334; Dec. Dig. § 308.*]

In Error to the District Court of the United States for Division No. 1 of the District of Alaska.

The plaintiff in error was the president of the defendant in error, a corporation, from January, 1898, until July 7, 1904. After his term of office expired the corporation brought an action against him to recover the sum of $12,343.60, which it was alleged were funds of the corporation which the plaintiff in error refused and neglected to turn over to its officers and directors. The plaintiff in error answered, accounting for the said sum as follows: That he had paid himself, for salary as president and general manager during the period of his office, $100 per month, amounting to $7,800; that in January, February, and March, 1900, in placing upon the market and selling the capital stock of the corporation in Boston and other Eastern cities, he had incurred traveling, hotel, and other incidental expenses, in the sum of $1,800; that in January, February, and March, 1901, he had expended $1,200 in like manner and for like services; that he had paid out for the annual assessment work upon the corporation's mining claims for the year 1903 $820, for assessment work for the year 1904 $800, and for assessment work for the year 1905 $600; that for office rent for 1903 he had paid $50, for office rent in 1904 $25; that he had paid Thomas R. Lyons, attorney at law, for legal service performed for the corporation in 1903 and 1904, $250, and to A. S. Lovett, for services performed for the corporation as bookkeeper and clerk in 1898 and 1899, $200; that he had deposited in bank to the account of the corporation in July, 1904, $53.13; that he had paid out for surveys, merchandise, drawing up of papers, stenographer's fees, etc., $196.24, leaving a balance due him from the defendant in error of the sum of $450.70. Upon the trial of the cause before a jury, a verdict was returned for the defendant in error for the sum of $10,299.30 and interest from January 15, 1905. The defendant in error subsequently remitted from the verdict $886.50, being all of the items mentioned in an itemized account of the plaintiff in error of amounts claimed to have been paid for the use of the corporation during the months of January, February, and March, 1901, except the sum of $313.50 thereof, which was for dinners, entertainments, and incidentals. Judgment was thereupon rendered in favor of the defendant in error for the sum of $9,412.80, with interest at 8 per cent. per annum from January 15, 1905, and costs and disbursements.

Winn & Burton, for plaintiff in error.
L. P. Shackleford and R. W. Jennings, for defendant in error.
Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the trial court erred in denying the application of the plaintiff in error for leave to amend his answer so as to allege that the claim for $1,800 for traveling, hotel, and other incidental expenses incurred on his trip to Boston was for expenses incurred in the year 1899, instead of in the year 1901, as originally alleged in the answer. We need not pause to discuss the question whether the trial court abused discretion in denying this application; for the record shows that, when the defendant in error took judgment, it remitted $886.50 of the items involved in the proposed amendment, and took judgment only for $313.50, which was for dinners, entertain-

ments, and incidentals to stockholders and prospective buyers of stock. As to those items the trial court very properly held that the plaintiff in error was not entitled to credit, since there was no contract to pay and no liability on the part of the corporation to pay them. The court said:

"It was not any part of his duty as superintendent or president to go to Boston and entertain those people, and there was no agreement that he should do it; no agreement to pay for it."

The justice of these remarks of the court is well sustained by the record. It was not alleged in the answer or shown by the proof that the sum so expended for dinners and entertainments was authorized or agreed to be paid for, or that the expenditure inured to the benefit of the corporation.

It is contended that the court erred in striking out, on the motion of counsel for the corporation, evidence of the amount paid by the plaintiff in error to A. S. Lovett for services as bookkeeper and clerk. Lovett had sued the plaintiff in error personally on two causes of action—one for salary, and the other for moneys alleged to have been converted by the plaintiff in error to his own use. He recovered judgment against the plaintiff in error for $900.39. The amount sued for for salary, and the amount sued for for moneys converted each exceeded the amount of the judgment recovered, and it does not appear for which of these demands, or for how much of either, the judgment was rendered. The court below held that there was no evidence connecting the corporation with the Lovett account, and that there was no evidence before the jury from which it could be ascertained how much the corporation ought to pay, if anything, on that account. Aside from the record of Lovett's judgment, there was no evidence before the court as to what services Lovett performed for the corporation or as to the value thereof. There was no error, therefore, in striking out the record of the judgment.

Error is assigned to the ruling of the court in withdrawing from the consideration of the jury items amounting to $1,800, claimed to have been paid by the plaintiff in error in traveling, hotel, and other incidental expenses, and in striking out his testimony as to his claim for salary as president of the corporation. The plaintiff in error and A. S. Lovett were the owners of certain mining claims at Mildred Bay, Alaska. On January 15, 1898, they, with B. M. Behrends, organized the Alaska Mildred Mining Company, the defendant in error herein, with a capital stock of $1,000,000, divided into 200,000 shares, of the par value of $5 each. One share was issued to Behrends, and the remainder was issued to Lovett and the plaintiff in error in exchange for their mining claims. By the by-laws the president was given the powers usually conferred upon that officer. Juneau was made the principal place of business of the corporation. The first Tuesday in July of each year was fixed as the time for the annual meeting of stockholders. Provision was made for special meetings of the stockholders at Juneau upon 60 days' personal notice in writing to each stockholder; but it was provided that notice might be dispensed with if all of the stockholders were present either in person

or by proxy and consented to the meeting on the records of the corporation. Lovett donated 12,500 shares, and the plaintiff in error 27,500 shares, of stock in the company, to be used by the company, by sale or otherwise, to develop and equip the mining property. In February, 1898, the plaintiff in error sold in the East 2,150 shares at 50 cents a share. He testified that with the money thus obtained he drove a tunnel 68 feet and did some prospecting. In February, 1899, he again went East and sold 10,000 shares at 75 cents per share.

There was no resolution of the board of directors, and no understanding or agreement between the other directors and the plaintiff in error, providing for payment to him of a salary or the expenses incurred upon these trips. There was such a conversation between the plaintiff in error and some of the stockholders in Boston, to whom he sold stock. They suggested that he ought to have a salary, and ought to be reimbursed for the money he had spent in entertaining them on the occasion of these visits to the East. In February, 1901, at a meeting of certain of the stockholders in Boston, a resolution was adopted to the effect that the president and manager should receive a reasonable salary for past and future services as such manager, and should be reimbursed for any expenditures on behalf of the company, "the amount of such salary and expenses to be determined and fixed at any regular stockholders' or directors' meeting to be held at some future time"; but nothing was done in pursuance of that resolution, and the question of payment of salary and other expenses was never brought before the corporation. The plaintiff in error presented no account to the directors, and made no effort to obtain a settlement. All that he did was to retain the money for his own use, instead of applying it to the work for which the stock was authorized to be sold. The power to make contracts for a corporation is vested in its board of directors, and they must act, collectively or as a board, in making all contracts, unless they have by their by-laws, or by previous resolution duly made, authorized some officer to contract on their behalf.

The evidence fails to show, moreover, that these trips to the East were made solely on account of the business of the corporation. The plaintiff in error had other business there. He was engaged in selling on his own behalf stock in the Windham Bay Company, and was attending to business for the Ebner Gold Mining Company and the Boston group of mines, of which he was president. When, upon the expiration of his office as president of the defendant in error, he turned over to the corporation the books, he kept his vouchers and memoranda of money now claimed to have been expended, and up to the time of the commencement of the present action he had presented no claim for salary or reimbursement of expenses. On December 15, 1902, he rendered a statement accounting for $28,474.50, the amount of the development fund realized on the sales of stock, and showing a balance on hand of $12,343.67, and appended to it the statement that there were no liabilities, except about $200, which was due the present contractors. This statement was made in a report to the stockholders concerning the work done on the mine and the condition of the mining properties. The trial court said:

"It is evident that the services required of the president in this case included that of general superintendent under the by-laws of the company. He accepted the office of president under those by-laws, and they required the general supervision of all the affairs of the company."

The evidence does not show that at any time he performed any services outside of his duties as president so prescribed by the by-laws, or that the company ever understood or agreed that he should be paid a salary; nor does his answer allege that the services performed by him were outside his duties as president.   10 Cyc. 921, and cases there cited.

We find no error for which the judgment should be reversed.   It is accordingly affirmed.